UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEDVIENO D'BARGE MAYES,<br><br>Plaintiff,<br><br>v.<br><br>M. EDWARDS, et al.,<br><br>Defendants. | No. 2:19-cv-2236 CKD P<br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDAITONS |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. He is proceeding on the following claims:

1. Use of excessive force in violation of the Eighth Amendment against defendants Valenzuela, Vargas and McDougle; and

2. Subjecting plaintiff to harmful conditions of confinement arising under the Eighth Amendment against defendants Valenzuela, Vargas, McDougle and Edwards.

Defendants' motion for summary judgment is before the court.

I. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents,

1 electronically stored information, affidavits or declarations, stipulations (including those made for
2 purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R.
3 Civ. P. 56(c)(1)(A).

4 Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

10 If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

23 In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
28 /////

2

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

II. Plaintiff's Allegations

In his complaint, which is signed under the penalty of perjury, plaintiff alleges as follows:

A. Pepper-Spray

At the relevant time, all four defendants were employed at California State Prison, Solano as Correctional Officers and plaintiff was imprisoned there. On February 2, 2019, plaintiff became involved in an altercation in a common area. Defendant Valenzuela was the first to respond to the altercation and released an "instantaneous blast" pepper-spray grenade. Defendant Valenzuela then followed up with blasts from a pepper-spray cannister hitting plaintiff in the neck and shoulder area despite the fact that correctional officers are trained to aim pepper-spray at the face.

Plaintiff was then pepper-sprayed by defendant Vargas on the back of the head, neck and upper back. At the same time, defendant McDougle pepper-sprayed plaintiff. Initially, McDougle hit plaintiff on his buttocks and groin. Then McDougle moved the stream up plaintiff's body until the stream hit the right side of plaintiff's face and the back of plaintiff's head.

By the end, plaintiff was drenched in pepper-spray.

B. Decontamination

At the end of the incident, plaintiff was placed in handcuffs and turned over to defendant Edwards for decontamination. Defendant Edwards permitted plaintiff to decontaminate his face, escorted plaintiff to the medical area, gave plaintiff a jump suit, and told plaintiff to wait to be seen.

During the wait, plaintiff complained to Edwards that his groin area was burning resulting in overwhelming pain. Plaintiff asked to be permitted to decontaminate his entire body but Edwards denied plaintiff's request and told plaintiff he could not give plaintiff any further decontamination. Plaintiff begged as the pain was "unbearable." In response, Edwards laughed then said, "that's what you get," and "I bet you'll learn your lesson now."

Plaintiff was eventually seen by medical personnel, but never received further decontamination. Following the visit to the medical area, plaintiff was placed in a holding cell.

On the evening of February 3, plaintiff experienced irritation and pain in his groin area and noticed pink scars. Plaintiff was seen by medical personnel again and was informed he had suffered chemical burns from the pepper spray and that plaintiff will be scarred for life.

Plaintiff alleges that as a result of his being pepper-sprayed and not properly decontaminated, he suffers from permanent scarring in his groin area and irritation with itching.

III. Applicable Eighth Amendment Standards

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. The use of force can amount to cruel and unusual punishment if the amount of force used is excessive. Excessive force occurs when there is the "the unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 7 (1992).

The court's inquiry into an excessive force claim focuses on the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of

force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (1992) (quotation marks and citations omitted).

Under the Eighth Amendment, prison officials have a duty to protect prisoners from harmful conditions of confinement. See Farmer v. Brennan, 511 U.S. 825, 833 (1994). A prison official may be held liable for subjecting an inmate to harmful conditions of confinement if an inmate suffers a sufficiently serious injury, and the prison official was deliberately indifferent to the risk of harm. Id. at 834, 837. The relevant inquiry is whether prison officials, "acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." Id. at 834 (internal quotation omitted).

IV. Defendants' Arguments and Analysis

   A. Excessive Force

Defendants argue that there is not a genuine issue of material fact as to whether the use of pepper-spray by defendants Valenzuela, Vargas and McDougle against plaintiff on February 2, 2019, amounted to excessive force in violation of the Eighth Amendment. The court agrees.

At his deposition, plaintiff admitted that on February 2, 2019, he became involved in an altercation involving two other inmates on an outdoor exercise yard. RT at 20. From plaintiff's own description of how the altercation began, there is no genuine issue of material fact as to whether the use of the "instantaneous blast" pepper-spray grenade amounted to excessive force, and plaintiff does not assert that use of the grenade did amount to excessive force. Id. at 25-28.

After the blast of pepper spray, plaintiff and an inmate named Adams continued to fight. Id. at 28. A correctional officer yelled "get down." Id. at 31. During the fight, plaintiff picked up Adams, slammed him to the ground, got on top of Adams and then began to punch him. Id. at 32. At that point, plaintiff could feel pepper spray hitting the back of his head. Id. Another officer started to spray as well. Plaintiff was hit on his lower body including the back of his pants. Id. Finally, an officer sprayed plaintiff on his face and at that point plaintiff stopped fighting and lay down. Id. at 33.

Plaintiff believes it was either defendant Vargas or Valenzuela who pepper sprayed

plaintiff first. Id. at 35. Defendant McDougle was the one who pepper-sprayed plaintiff the second time hitting the back side of plaintiff's lower body. Id. at 36. McDougle sprayed "wildly," "up and down and side to side," essentially "hosing" plaintiff. Id. at 37. The spray reached plaintiff's boxer shorts. Id. at 38. Defendant Valenzuela was the one who sprayed plaintiff in the face and eyes ending the incident. Id. at 38-39.

In his declaration, Vargas indicates that he was the first to use his pepper-spray against plaintiff. Vargas asserts that he aimed at plaintiff's face as that is where pepper-spray is most effective, but instead hit the back of plaintiff's head.

Defendant McDougle indicates that he too shot pepper-spray toward plaintiff. He asserts that he too aimed for plaintiff's face but could not hit his target because of plaintiff's movement. McDougle says he hit plaintiff on the back of his head and the right side of plaintiff's face.

Defendant Valenzuela agrees that he was the one who hit plaintiff in the face with pepper-spray thus ending the altercation between plaintiff and Adams.

There is no genuine issue of material fact as to whether the force used by Vargas and Valenzuela was excessive in violation of the Eighth Amendment. Generally, the use of pepper-spray to stop inmates from fighting does not violate the Eighth Amendment, e.g. Clement v. Gomez, 298 F.3d. 898, 903-04 (9th Cir. 2002), and nothing before the court suggests the use of pepper-spray was inappropriate here.

The only arguable basis for an Eighth Amendment claim is the manner in which plaintiff alleges McDougle used his pepper-spray, which included landing blasts on the lower portion of plaintiff's body instead of near the eyes where it is most effective. But there is nothing before the court indicating that McDougle meant plaintiff any particular harm, other than the harm normally associated with pepper-spray, by shooting the pepper spray in the manner he did. There is nothing before the court to suggest that McDougle had any reason to believe that with proper decontamination plaintiff would suffer any serious injuries as a result of pepper-spray exposure to his lower body. This being the case, there is no evidence before the court that McDougle's use of pepper-spray was malicious or sadistic.

/////

B. Harmful Conditions

Plaintiff's remaining Eighth Amendment claim concerning conditions of confinement arises from plaintiff's allegations concerning pepper-spray decontamination. Defendants are correct that these allegations only concern defendant Edwards as plaintiff admits that the involvement of the other defendants ended at the use of pepper-spray and did not carry over into the decontamination process. Accordingly, the court will recommend that defendants Valenzuela, Vargas and McDougle be granted summary judgment as to plaintiff's remaining Eighth Amendment conditions of confinement claim.

As for defendant Edwards, defendants argue there is no genuine issue of material fact as to whether he was at least deliberately indifferent to a substantial risk of harm. The court disagrees.

In his declaration (ECF No. 28-4), Edwards admits that after plaintiff was pepper-sprayed Edwards took custody of plaintiff, around 2:35 p.m., and that he took plaintiff to a decontamination station where plaintiff used both the eye decontamination fountain and a shower. In his deposition, plaintiff agrees with Edwards as to the shower, but asserts only the top of his head was rinsed. RT at 47.

Edwards and plaintiff agree that, at that point, they left for the Triage Treatment Area (TTA). Plaintiff asserts that they made a stop at a second decontamination area before arriving at the TTA after plaintiff complained that he was still burning. RT at 45. Edwards does not recall this.

Plaintiff asserts that when they reached the second decontamination area, defendant Edwards directed plaintiff to rinse his face again and he did. Id. at 46-47. According to plaintiff, Edwards rinsed the top of plaintiff's head again as well. Id. at 47. When plaintiff complained his whole body was burning, defendant Edwards simply continue to rinse plaintiff's head. Id. at 49.

Edwards indicates that once they arrived at the TTA, plaintiff was evaluated by medical staff and released. Upon plaintiff's release, Edwards believed that plaintiff no longer required medical care.

Plaintiff asserts that in the TTA, Edwards directed plaintiff to a bathroom and told him to

7

take off his clothes. Id. at 51. There was a sink in the bathroom, but plaintiff did not use it. Id. at 52. Plaintiff removed his clothes except for his boxer shorts. Id. at 52. Plaintiff told defendant Edwards that he might need new boxers as the ones he had on had pepper spray on them and defendant said he would "see what he could do." Plaintiff never received new boxers. Id. at 52. Edwards gave plaintiff a paper jumpsuit and plaintiff put it on over his boxers. Id. at 52-53.

Plaintiff indicates that at about that time he was handcuffed and told to sit on a bench while he waited for medical attention. Id. at 53-54. He waited for approximately 45 minutes. Id. at 54. During the wait, plaintiff complained to Edwards that he needed further decontamination because his groin area was still burning to the point that it was driving him crazy. Id. at 54. Edwards indicated there was nothing more he could do. Id.

Registered Nurse Mark Russo indicates in his declaration (ECF No. 28-7) that he evaluated plaintiff at 3:09 p.m. in the TTA. He asked plaintiff to explain what had happened to him and plaintiff declined to speak. Russo noted that plaintiff had what appeared to be pepper-spray on his pants and boxer shorts and that plaintiff had decontaminated with water. Russo did not find any injuries on plaintiff. Plaintiff was then provided instructions as to how to decontaminate further if necessary and released at 3:16 p.m.

Plaintiff asserts that after he told Russo that his groin area was burning and that he needed to be decontaminated, Russo gave plaintiff a towel. Plaintiff used the towel to wipe his groin area. While the towel cooled down the burning for about 30 minutes, after that, the burning became worse. RT at 54-56. Russo told plaintiff that defendant Edwards was in charge of decontamination. Id. at 56. Edwards again said there was nothing he could do. Id.

Plaintiff claims he was in the TTA for almost an hour. Id. at 60. When he left, he was escorted to a holding cell by defendant Edwards. As they walked, plaintiff told Edwards his groin area was still burning. Edwards told plaintiff that when he arrived at his new housing assignment, he should ask to take a shower or use a sink. Id. Plaintiff had no further involvement with Edwards. Id. at 61.

Plaintiff was in the holding cell for approximately three hours at which point he returned to his cell. When he got back to his cell he was permitted to shower and change his clothes. Id.

8

1   at 60-63. About 45 minutes after the shower, the burning stopped. Id. at 62.

2         Considering everything in the light most favorable to plaintiff, as the court must, the court finds that there is at least a genuine issue of material fact as to whether defendant Edwards was deliberately indifferent to a substantial risk of serious harm after Edwards and plaintiff arrived at the TTA. Plaintiff told Edwards his groin area was burning at least two different times and Edwards declined to escort plaintiff to a shower so that he could wash the pepper spray from his midsection. Edwards claims that he relied on Nurse Russo's conclusion that no further treatment or decontamination was necessary. But, as indicated above, plaintiff asserts that Russo said that further decontamination was up to Edwards and not Russo. Edwards fails to point to anything else suggesting his not taking plaintiff to a shower was justified.

      Defendants claim defendant Edwards is immune from plaintiff's remaining Eighth Amendment claim under the "qualified immunity" doctrine. "Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001).

      As indicated above, there is at least a genuine of material fact as to whether defendant Edwards was deliberately indifferent to a substantial risk of serious harm that caused plaintiff injury thereby violating plaintiff's Eighth Amendment rights. Plaintiff's right not to be exposed to substantial risks of serious harm in prison was clearly established when the events underlying plaintiff's Eighth Amendment claim against defendant Edwards occurred, defeating defendants' assertion of qualified immunity.

IV. Conclusion

      For all of the foregoing reasons, the court will recommend defendants' motion for summary judgment be granted as to plaintiff's remaining excessive force claims against

9

defendant Vargas, Valenzuela and McDougle.  The court will also recommend defendants be granted summary judgment as to plaintiff's claims against defendants Valenzuela, Vargas and McDougle arising under the Eighth Amendment for exposure to harmful conditions of confinement.  Finally, the court will recommend defendants' motion be denied as to plaintiff's claim against defendant Edwards arising under the Eighth Amendment for exposure to harmful conditions of confinement.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court assign a district court to this case.

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgement (ECF No. 28) be:

> A. Granted with respect to plaintiff's claims against defendants Valenzuela, Vargas and McDougle for use of excessive force in violation of the Eighth Amendment.
>
> B. Granted with respect to plaintiff's claims against defendants Valenzuela, Vargas, McDougle arising under the Eighth Amendment for exposure to harmful conditions of confinement.
>
> C. Denied as to plaintiff's claim against defendant Edwards arising under the Eighth Amendment for exposure to harmful conditions of confinement.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The

/////
/////
/////
/////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 15, 2022

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
maye2236.msj